UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
DAVID R. COLLINS,

        Plaintiff,

        - against –

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CV-6673 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff David R. Collins ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB"). The parties have cross-moved for judgment on the pleadings. (Dkts. 8, 12.) Plaintiff seeks reversal of the Commissioner's decision and an immediate award of benefits, or alternatively, remand for further administrative proceedings. The Commissioner seeks affirmation of the denial of Plaintiff's claims. For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Order.

**BACKGROUND**

**I.    PROCEDURAL HISTORY**

On January 3, 2015, Plaintiff filed an application for DIB, claiming that he was disabled beginning on February 19, 2014. (Tr. 23.)[2] After his claim was denied (Tr. 85-90), Plaintiff

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this suit.

[2] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

requested and appeared at a hearing before an administrative law judge ("ALJ"), Margaret A. Donaghy, on November 3, 2015 (Tr. 43-79). The ALJ issued a decision on January 27, 2016, finding that Plaintiff was not disabled from February 19, 2014, his alleged onset date, through the date of the ALJ's decision.[3] (Tr. 23-36.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 30, 2016. (Tr. 1-7.)

**II.    STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Social Security Act (the "Act") may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (alterations and internal quotation marks omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the

---

[3] Generally, the ALJ considers whether the claimant was disabled through the date that he last met the insured status requirements of Title II of the Social Security Act. In this case, however, Plaintiff met the insured status requirements until March 31, 2017. (Tr. 25.)

2

record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013).

## III. ELIGIBILITY STANDARD FOR SOCIAL SECURITY DISABILITY BENEFITS

To receive DIB, claimants must be disabled within the meaning of the Act. Claimants establish disability status by demonstrating an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). The claimant bears the initial burden of proof on disability status and must demonstrate disability status by presenting medical signs and findings, established by "medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(D). However, the ALJ has an affirmative obligation to develop the administrative record. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). This means that the ALJ must seek additional evidence or clarification when the claimant's medical reports contain conflicts or ambiguities, if the reports do not contain all necessary information, or if the reports lack medically acceptable clinic and laboratory diagnostic techniques. *Demera v. Astrue*, No. 12 Civ. 432, 2013 WL 391006, at *3 (E.D.N.Y. Jan. 24, 2013); *Mantovani v. Astrue*, No. 09 Civ. 3957, 2011 WL 1304148, at *3 (E.D.N.Y. Mar. 31, 2011).

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps in the inquiry; the Commissioner bears the burden in the final step. *Talavera*, 697 F.3d at 151. First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer

is yes, the claimant is not disabled. If the claimant is not engaged in "substantial gainful activity," the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is determined to be severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled within the meaning of the Act. However, if the impairment is severe, the ALJ proceeds to the third step, which considers whether the impairment meets or equals one of the impairments listed in the Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the ALJ determines at step three that the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. On the other hand, if the claimant does not have a listed impairment, the ALJ must determine the claimant's "residual functional capacity" ("RFC") before continuing with steps four and five. The claimant's RFC is an assessment which considers the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1). The ALJ will then use the RFC determination in step four to determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the answer is yes, the claimant is not disabled. Otherwise the ALJ will proceed to step five where the Commissioner then must determine whether the claimant, given the claimant's RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise the claimant is disabled and is entitled to benefits. *Id.*

## IV. RELEVANT FACTS AND MEDICAL RECORDS

Plaintiff's claims of psychiatric disability, including major depressive disorder, post-traumatic stress syndrome ("PTSD"), and panic disorder with agoraphobia (Tr. 25) stem from Plaintiff's military service.[4] He was a diesel mechanic in the United States Army from April 2007 until his honorable discharge in September 2010. (Tr. 51.) Plaintiff experienced two notable traumatic situations while he was deployed in Iraq from April 2009 to April 2010 (Tr. 434): first, one of his friends was killed after agreeing to switch positions with Plaintiff (Tr. 423); second, he "was surrounded by [fifteen] Iraqi nationals whom he was tasked with escorting" and whom he later discovered were insurgents (Tr. 342, 346, 347, 351). Plaintiff "date[s] all" of his psychiatric symptoms to this second incident. (Tr. 342.) Plaintiff later attempted suicide by "put[ting] a gun in his mouth with the intent of killing himself", but was saved because a friend intervened. (Tr. 343.) Six months into his deployment, he was sent home due to anxiety and depression; he began psychiatric treatment at Fort Drum until his discharge in 2010. (Tr. 383–84.)

After his discharge, he received an automotive certificate in 2011 from Apex Technical School. On February 23, 2011, Plaintiff presented to the New York Veterans Affairs Medical Center ("VAMC") with the following issues:

> [I]ncreasing levels of stress in the past 6 months since being discharged from the Army. . . . Reports general anxiety and worry and panic attacks that are increasing in frequency to daily. Describes 30 minute period where he feels weak, dizzy and faint, sweaty, shaky, trouble breathing and as though things are closing in on him. Comes on without warning and needs to leave the situation and sit in order to have it pass. Having trouble sleeping, now maybe 5 hours per night, low energy, trouble concentrating in school and has seen his grades drop from A's to B's as a result.

---

[4] Plaintiff's physical injuries and conditions during his military service included status-post repair of a non-union of the right scaphoid with avascular necrosis, asthma, lumbar radiculopathy, tinnitus, cellulitis, right patellofemoral syndrome, and seasonal allergies. (Tr. 25.) Due to the grounds on which this Order remands Plaintiff's application for further proceedings, the Court recites only those aspects of Plaintiff's medical history that are relevant to resolving the pending motions.

5

(Tr. 441.) Plaintiff also reported feeling "stressed, sometimes get[ting] very anxious, feeling shaky, when he gets stressed. Reports he has been feeling this way over past month. Says he has lots of problems that are making him nervous." (Tr. 445.) Plaintiff was diagnosed with anxiety disorder with panic, and prescribed Paxil, Klonopin, and Seroquel. (Tr. 443, 444, 448.)

On March 1, 2011, Plaintiff returned to the VAMC for a refill of Paxil, Klonopin, and Seroquel. (Tr. 438-39.) He stated that he was "doing fine until today when I ran out of med[ication], now I have the same thing, I feel anxious and dizzy." (Tr. 439.) He was diagnosed with anxiety disorder not otherwise specified (NOS) and depressive disorder NOS. (*Id.*) Two days later, on March 3, 2011, Plaintiff returned to the VAMC for a physical assessment. He tested positive on a PTSD screen and reported that he "[d]oes not like crowds and experiences panic attacks [daily] especially if he is not taking his meds." (Tr. 434.) He told hospital staff that he was currently at Queensborough Community College studying accounting. (*Id.*)

On March 23, 2011, Plaintiff presented to David M. Matalon, M.D., at the VAMC for a psychiatric consultation. (Tr. 423, 786-90, 969-73.) He reported daily intrusive memories, insomnia, hypervigilance which led to severe anxiety, exaggerated startle response, occasional nightmares, avoidance, and that he "[wa]s isolating somewhat from social activity". (Tr. 423, 425, 786.) Dr. Matalon prescribed Ambien, Seroquel, Klonopin, and Celexa, and diagnosed PTSD and generalized anxiety disorder ("GAD"). (Tr. 424-25.) The next day, on March 24, 2011, Plaintiff visited the VAMC again, and Dr. Matalon found that Plaintiff "suffers from generalized anxiety by frequent worrying and physical symptoms" and "presents with post-traumatic features as evidenced by repeated intrusive thoughts of traumatic event with hypervigilance." (Tr. 419.) Similar symptoms were noted during Plaintiff's Traumatic Brain Injury Consultation. (Tr. 781.) On April 13, 2011, Plaintiff missed a mental health intake evaluation scheduled at the VAMC.

(Tr. 779.) On May 27, 2011, while Plaintiff was in the VAMC after a motorcycle accident, the treating physician noted that Plaintiff had "intrusive thoughts and hypervigilance daily which interfered with his interactions with others. Is currently in school. He states he does not have a network of emotional support but does occasionally speak to his grandfather." (Tr. 418.)

Between 2012 and August 2013, Plaintiff attended school full-time for his Master Auto Body and Collisions Certificate, and worked as a gym manager. (Tr. 49-50, 306, 389.) He stated that "even in school, it was hard. I would have to explain to my teachers, hey I need—sometimes I have to leave the room if it gets too strenuous for me. Or, you know, I would have to work on something by myself." (Tr. 57.) On April 2, 2013, Plaintiff underwent a Biopsychosocial Assessment in connection with a hospital stay following an allergic reaction. He reported having "strong family, personal relationships or supports in the community" (Tr. 390), but also reported that he had "little relationships/social interaction" (Tr. 718).

On April 8, 2013, Plaintiff saw his primary care physician, Dr. Lawrence De Weil, for anxiety and insomnia. (Tr. 381, 385, 698-704, 1012-15.) Plaintiff stated that "he ran out of medication; over past few [weeks], noted increasing anxiety for unclear reasons . . . he seeks care of anxiety and insomnia." (Tr. 381.) Dr. De Weil previously saw Plaintiff in 2011 for anxiety and PTSD, but Plaintiff did not "follow up in mental health clinic because of schedule and fear of group sessions." (*Id.*) Dr. De Weil assessed panic attacks, anxiety, and PTSD, and prescribed Klonopin and Seroquel. (Tr. 383.) He also noted that while on Clonazepam and Seroquel, Plaintiff should do "no driving[,] operating dangerous machinery[,] engaging in dangerous activity[,] or activity requiring full attention". (Tr. 700.) Plaintiff's case manager stated that Plaintiff reported that he "does not like to be in crowds or around others. Reports he just goes to school and stays home." (Tr. 385.) On April 12, May 17, and June 21, 2013, Plaintiff missed mental health intake

7

evaluations scheduled at the VAMC. (Tr. 691, 697-98.) On September 28, 2013, Plaintiff presented to the VAMC Emergency Department with complaints of anxiety, tingling in his fingers and toes, hyperventilation, and intermittent pain in the left pectoral area. (Tr. 374.) He looked "very anxious" and was diagnosed, in part, with GAD. (Tr. 463.)

After Plaintiff graduated from school, from October 2013 to February 19, 2014—the date of the onset of his disability—he worked as a diesel mechanic at an airport eight hours a day, five days a week. (Tr. 53, 203.) He stated that he stopped, in part, because he "[could not] be around too many people. . . . I actually almost passed out on the job from anxiety." (Tr. 53-54.) He further stated that "[t]he planes were giving me anxiety" (Tr. 349), and "[u]sually, when there's more than one person talking to me, I get this bad anxiety and I start to shake. And then I get very dizzy. And, you know, if I don't get out of the situation or take my medicine, I'll pass out" (Tr. 56).

On July 31, 2014, Plaintiff went to the VAMC for examinations in connection with his DIB claim from the Department of Veterans Affairs ("VA"). Dr. Ronald E. Hanover, a psychologist, evaluated Plaintiff for PTSD, GAD, and panic attacks. (Tr. 481.) Plaintiff reported having panic attacks and "near-continuous panic or depression affecting the ability to function independently, appropriately and effectively." (Tr. 487.) Dr. Hanover found that Plaintiff had occupational and social impairment with deficiencies in most areas, such as a work, school, family relations, judgment, thinking and/or mood. (Tr. 482.) He further found that Plaintiff met all of the criteria for PTSD (Tr. 486-87):

> [Plaintiff] described very clearly all the symptoms of PANIC DISORDER being taken to hospital at least 4 times for fear he was having a heart attack. He described all the symptoms of panic attack. . . . He described ANXIETY as a daily occurrence being unable to be in crowds, or open spaces, being totally [unable] to take public transportation and in general being anxious over living now. He speaks of staying home, drawing the drapes (all black) and living an isolated life. He broke up with his girl-friend as he was unable to socialize (he cannot go to a movie, cannot take his daughter to theme parks[,] cannot eat out). He describes all the symptoms of

8

>PTSD. . . . In the opinion of this psychologist[,] Mr. Collins has all the symptoms
>of PTSD, GAD AND PANIC ATTACKS leading to a life of isolation, withdrawal,
>and poor sel[f]-image. He has been on medication for these issues.

(Tr. 487-88.) That same day, Plaintiff also saw Dr. Ira Jasser, a psychiatrist, after Plaintiff stated that he wanted to resume mental health treatment at the VAMC. Plaintiff reported "nightmares are problematic as are daytime panic attacks that are [triggered] by crowds." (Tr. 357.) Dr. Jasser diagnosed Plaintiff with chronic PTSD and panic disorder with agoraphobia and prescribed prazosin, Ambien, Klonopin, and sertraline. (*Id.*) On August 8 and August 15, 2014, Plaintiff missed mental health intake evaluations scheduled at the VAMC. (Tr. 342.)

On September 16, 2014, Plaintiff received his first disability decision from the VA. It assigned an "overall or combined rating" of 80% disabled, with 70% of the determination based on Plaintiff's PTSD with generalized anxiety disorder and panic attacks. (Tr. 269-71.) The VA's PTSD evaluation was based on the following findings:

- Near-continuous panic affecting the ability to function independently, appropriately and effectively
- Inability to establish and maintain effective relationships
- Difficulty in adapting to a worklike setting
- Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood
- Disturbances of motivation and mood
- Difficulty in establishing and maintaining effective work and social relationships
- Panic attacks (weekly)
- Mild memory loss
- Depressed mood
- Chronic sleep impairment
- Anxiety
- Suspiciousness

(Tr. 269-70.)

On November 13, 2014, Plaintiff underwent a psychosocial assessment at the VAMC at his request because he was feeling extremely anxious and had run out of Klonopin nine or ten days prior. (Tr. 342.) He reported,

9

his biggest concern is anxiety ("I can't leave the house" "I close the blinds" "I am isolating"). He stated that he feels anxious, on-guard, edgy, worried, and paranoid (feels like people are watching him). He endorsed nightmares about his military experiences ~4x/week. He endorsed regular intrusive thoughts of his military experiences. He said that he daydreams excessively. He denied depressed mood. He denied [suicidal or homicidal] intents, or plans.

(*Id*.) He also reported psychic anxiety, panic symptoms, and insomnia (Tr. 343), but had a negative screen for depression (Tr. 344). That same day, he was also evaluated at the VAMC by Dr. Marie Weinberger, a psychiatrist, for anxiety, depression, and PTSD, as well as to refill his Klonopin prescription. (Tr. 341.) He stated that he "fe[lt] much better on Klonopin" (*id*.), but that he had stopped taking sertraline because of the side effects (Tr. 341-42). On November 21, 2014, Plaintiff missed a mental health intake evaluation scheduled at the VAMC. (Tr. 340.)

On December 29, 2014, Plaintiff went to the VAMC, in part, for worsening anxiety and PTSD symptoms. (Tr. 332, 460.) Dr. De Weil noted that Plaintiff was "on Klonopin, which helps[,] but he ran out" (*id*.), and that Plaintiff had stopped taking Zoloft because it made him feel "loupy" [sic] (Tr. 527). Dr. De Weil requested that an "[appointment] be made with Dr. Matalon in the PTSD clinic ASAP" (Tr. 327), and gave Plaintiff a refill for Klonopin and Ambien (Tr. 327-28, 332, 523, 638). On January 25, 2015, Plaintiff returned to Dr. Jasser for psychiatric medication management, and reported "experiencing Post Traumatic Stress that includes upsetting memories of my trauma." (Tr. 318.) Dr. Jasser added Prazsin and Ambien, resumed Klonopin, and added Sertraline. (Tr. 319, 1332.)

On January 29, 2015, Plaintiff submitted his function report as part of his DIB application. (Tr. 212.) He stated that he cannot "go to the mall, take public transportation, do a push up, conversate with a group of people", all due to his condition, and that he cannot sleep due to nightmares and insomnia. (Tr. 213.) He further stated that he "[h]ardly" goes outside other than "[m]aybe twice a week" because he is "afraid" and spends time with others "[o]nce a month

10

maybe". (Tr. 215.) He said that he only speaks to family and is "very anxious around anyone else." (*Id.*) Additionally, he stated that he travels by car, but cannot go out alone. (*Id.*) He further stated that he does "not often" finish what he starts (Tr. 219) and "shut[s] down" when there is stress or change in his schedule (Tr. 220). Finally, he stated that he has "daily" panic attacks, which he responds to by "tak[ing] his medicine, breath[ing] big breaths, and seclud[ing] himself." (Tr. 223.) Plaintiff said that the panic attacks last "about an hour or two depending on the circumstances and it takes "at least 5 hours before [he] go[es] back to normal" after them. (*Id.*)

On February 1, 2015, Plaintiff returned to the VAMC Emergency Department with "heartburn, palpitations, chest pain in certain positions" and reported being out of Klonopin for the prior two days. (Tr. 310-11.) Plaintiff reported that he had recently joined a gym. (Tr. 311.) He was diagnosed, in relevant part, with anxiety. (Tr. 314.) On February 27, 2015, the New York State Office of Temporary Disability Assistance completed an electronic records request for medical advice and noted that the "[o]nly treating source is VA, [Plaintiff] having issues with anxiety, PTSD and leaving house. Limited records from VA source. . . . [N]o other psych treatment between 02/2014 until 06/2014." (Tr. 586.) On May 27, 2015, Plaintiff had an appointment with Dr. Matalon. He complained of "insomnia, significant hypervigilance which leads to panic and causes isolation, insomnia." (Tr. 964.) Dr. Matalon noted that Plaintiff "obtained degree in automotive repair, got a job but had to leave after 4 months b/c of anxiety, last worked 2/2014." (*Id.*) Dr. Matalon assigned a Mental Health Treatment Coordinator to Plaintiff's case and discontinued Ambien and Zoloft but prescribed Remeron and Klonopin. (*Id.*) On July 21, 2015, Plaintiff reported to Dr. Matalon that "things have been rough" due to financial strain and eviction and that his "[a]nxiety levels have increased, sleep remains poor." (Tr. 963.) Dr. Matalon discontinued the Remeron, continued the Klonopin, and started Vistaril. (*Id.*) Plaintiff

11

also began taking oxycodone for his wrist pain and was advised that a potential side effect of his medication was impaired driving or impaired ability to safely operate machinery. (Tr. 978, 992, 993, 1168.)

On August 12, 2015, Plaintiff received his second disability decision from the VA. It found him 100% disabled effective July 17, 2015, but did not change his percentage of disability due to PTSD or anxiety. (Tr. 137.) The VA also found that he was entitled to "special monthly special compensation based on [being] housebound" effective July 17, 2015 on the basis that "[t]he evidence of record shows that you are service connected for asthma currently at 100 percent disabling and a[] separate evaluation of 70 percent for your service connected post traumatic stress disorder which renders you entitle[d] to statutory housebound benefits." (*Id.*)

On November 16, 2015, Dr. Matalon received a voicemail from Plaintiff "stating that he is sleeping very poorly and feels anxious. Requesting to be placed back on Seroquel", which Dr. Matalon obliged. (Tr. 1181.) On December 14, 2015, Dr. Matalon wrote a letter certifying that Plaintiff received treatment at the VAMC for PTSD and stating that "[g]iven the intensity of his underlying psychiatric symptoms, [Plaintiff] is unable to maintain gainful employment at the present time." (Tr. 1022.)

## V. ALJ DECISION

ALJ Donaghy's January 26, 2016 decision followed the five-step evaluation process established by the SSA to determine whether an individual is disabled. (Tr. 26-36.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged onset date (February 19, 2014) through the date of decision (January 26, 2016). (Tr. 25.) At step two, the ALJ determined that Plaintiff suffered from major depressive disorder, PTSD, panic disorder with agoraphobia, status-post repair of a non-union of the right scaphoid with avascular

necrosis, asthma, and lumbar radiculopathy, each of which qualified as severe impairments, and tinnitus, cellulitis, right patellofemoral syndrome, and seasonal allergies, each of which qualified as non-severe impairments. (*Id.*) At step three, the ALJ determined that Plaintiff's impairment did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26.) In reaching this determination, the ALJ considered Listings 1.02 ("Major dysfunction of joint(s)"), 12.04 ("Affective Disorders") and 12.06 ("Anxiety Disorders"). (*Id.*) As support for this determination, the ALJ noted that Plaintiff has "consistently been able to perform personal care" and that his "reported difficulty leaving the house at times due to anxiety . . . ha[s] been in the context of running out of medication" and that "treatment records do not confirm such an inability" to leave his home. (Tr. 26-27.)

Having determined that Plaintiff's impairment did not meet or medically equal any of the impairments in the Listings, ALJ Donaghy determined Plaintiff's RFC, finding that Plaintiff was able to perform sedentary work with certain exceptions. (Tr. 28.) With respect to Plaintiff's psychiatric symptoms, ALJ Donaghy found that "while there is no doubt that the claimant's psychiatric symptoms have a significant impact on his daily functioning, the evidence as a whole does not suggest that these limitations are totally disabling when the claimant is getting treatment and taking his medications." (Tr. 34; *see also* Tr. 30.) The ALJ also noted that Plaintiff was still able to be a full-time student as late as November 2014 (Tr. 30, 32)[5] and had "good activities of daily living" (Tr. 31). Additionally, ALJ Donaghy stated that although she was "mindful that [Plaintiff] was found to have a veteran's disability rating of 70% relating to his [PTSD] . . . the

---

[5] The Court cannot determine how ALJ Donaghy concluded that Plaintiff was a full-time student until November 2014. None of the ALJ's citations to the record support this assertion. (*See* Tr. 30.) During the ALJ Hearing, Plaintiff specifically stated that he did not remember when in 2014 he concluded the master auto body and collisions certificate program (Tr. 49-50) and his Disability Report stated that he had completed the course in August *2013* (Tr. 203.)

13

Social Security Administration utilizes different standards of disability than the veterans' ratings, and these ratings cannot be dispositive in Social Security Administration disability determination." (Tr. 32.) The ALJ also stated that Plaintiff's medical treatment has been "conservative" since Plaintiff has been "hospitalized only on rare occasion for his impairments" and "has consistently noted in the treatment records that Klonopin alleviates his anxiety symptoms." (Tr. 34.) Finally, ALJ Donaghy determined that Dr. Matalon's opinion that Plaintiff was unable to work due to his disability was "not entitled to controlling or even great weight, as disability is an issue reserved to the Commissioner." (*Id.*) ALJ Donaghy ultimately found that Plaintiff has mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, or pace, but that he functions well enough to perform a range of simple, low contact work. (*Id.*)

At step four, ALJ Donaghy determined that Plaintiff was unable to perform his past relevant work. (Tr. 35.) At step five, based on Plaintiff's RFC and testimony by a vocational expert, the ALJ determined that Plaintiff could make a successful adjustment to work existing in significant numbers in the national economy. (Tr. 35-36.) On that basis, ALJ Donaghy found that Plaintiff was not disabled from the alleged onset date (February 14, 2014) through the date of the decision (January 27, 2016). (Tr. 36.)

## DISCUSSION

Plaintiff challenges ALJ Donaghy's denial of benefit on three grounds. First, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC by failing to properly weigh the medical evidence and failing to fully develop the record for Plaintiff, who was acting *pro se*. (Pl.'s Br.,

Dkt. 9, at 10-15.)[6] Second, Plaintiff argues that the ALJ failed to properly evaluate Mr. Collins's credibility. (*Id.* at 15-18.) Third, Plaintiff argues that the ALJ failed to adequately consider the VA Disability Determination. (*Id.* at 18-20.) For the reasons stated below, the Court finds that ALJ Donaghy failed to develop the record to properly determine Plaintiff's RFC and also failed to consider the VA Disability Determination. Furthermore, the Court finds that the ALJ's errors in this regard are grounds for remand to further develop the record and issue a new decision, as explained more fully herein.[7]

First, ALJ Donaghy improperly concluded in its RFC analysis that Plaintiff's anxiety is managed when he is "getting treatment and taking his medications." (Tr. 26, 27, 30, 34.) While Plaintiff did state on some occasions that Klonopin made him feel better, there is no medical basis for the ALJ's conclusion that medication sufficiently manages Plaintiff's PTSD and anxiety to a degree where he can perform work-related functions. *See Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014). In just one example, during Plaintiff's PTSD evaluation on July 31, 2014, Dr. Hanover found that Plaintiff had anxiety "as a daily occurrence being unable to be in crowds, or open spaces, being totally unable to take public transportation and in general being anxious over living now" (Tr. 488), despite the fact that Plaintiff was already taking Klonopin and other medications (Tr. 383, 424, 425, 438, 439, 443, 444, 448). On this issue,

---

[6] Page numbers refer to the pagination generated by the Court's CM/ECF system, and not the document's internal pagination.

[7] Because the Court reverses and remands on these grounds, the Court need not address the ALJ's evaluation of Plaintiff's credibility, the lack of weight given to Dr. Matalon's opinion, or the ALJ's erroneous chronology of Plaintiff's time as a student. On remand, however, the ALJ should reconsider these determinations *de novo* in light of the holdings made in this Order. The ALJ may also choose to reassess its determination that Plaintiff can perform the job of escort vehicle driver (Tr. 36) in light of the fact that Dr. De Weil previously told Plaintiff that he should do "no driving[,] operating dangerous machinery[,] engaging in dangerous activity[,] or activity requiring full attention" while on Klonopin (Tr. 700).

the ALJ was required to develop the record by either seeking out the opinion of the treating physician—in this case Dr. Matalon—or retaining a qualified expert to establish the mental RFC found for Plaintiff. *See Burger v. Astrue*, 282 F. App'x 883, 885 (2d Cir. 2008) ("Indeed, the relevant regulations specifically authorize the ALJ to pay for a consultative examination where necessary to ensure a developed record."). The ALJ was not entitled to draw her own medical conclusions about Plaintiff's RFC. *See Gross*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (remanding where the ALJ determined Plaintiff's RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records"); *see also Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010) ("[w]hen an ALJ denies benefits, she must build an accurate and logical bridge from the evidence to her conclusion, . . . and she is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record") (internal quotations and citations omitted).

The ALJ's approach in this case violated the basic rule that "[t]he ALJ is not permitted to substitute his [or her] own expertise or view of the medical proof for the treating physician's opinion" or a qualified expert. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Therefore, the case should be remanded for further development of the record. *Cichocki,* 729 F.3d at 177 ("[W]here [the Court] is 'unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ,' we will not 'hesitate to remand for further findings or a clearer explanation for the decision.'") (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)); *see also Legall v. Colvin*, 13-CV-1426, 2014 WL 4494753, at *4 (S.D.N.Y. Sept. 10, 2014) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his [or her] own opinion for that of a physician, and

has committed legal error.") (quoting *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F.Supp.2d 330, 347 (E.D.N.Y. 2010)).

Second, the ALJ erred by failing to give any weight to the VA's determination of disability. In the Second Circuit, "a determination made by another governmental agency that a social security claimant is disabled is entitled to some weight and should be considered," even though "that determination is not binding." *Lohnas v. Astrue*, 510 F. App'x 13, 14 (2d Cir. 2013) (citation and internal quotation marks omitted). "Despite this . . . limited approach, however, the Commissioner is not generally free to completely disregard a VA disability rating." *Machia v. Astrue*, 670 F. Supp. 2d 326, 335 n.10 (D. Vt. 2009) (citing *Allord v. Barnhart,* 455 F.3d 818, 820 (7th Cir. 2006)). In this case, although the ALJ noted that Plaintiff was found to have a veteran's disability rating of 70% relating to his PTSD, she summarily dismissed that finding with the simple statement that "the Social Security Administration utilizes different standards of disability than the veterans' ratings, and these ratings cannot be dispositive in Social Security Administration disability determination." (Tr. 32.) While it is true that the VA's "determination is not binding" on the SSA, *Lohnas*, 510 F. App'x at 14, here, the ALJ does not appear to have given the VA's disability determination any consideration or weight, in contravention of Second Circuit precedent. Furthermore, the fact that the VA found that Plaintiff was entitled to "special monthly special compensation" *for being housebound* effective July 17, 2015 due, in part, to Plaintiff's PTSD (Tr. 137 (emphasis added)), lends credence to Plaintiff's claims that he rarely leaves his home, making the ALJ's failure to address this fact all the more puzzling and unjustified. (*See also* Tr. 586.)

Accordingly, this action is remanded for further development of the record and further proceedings consistent with this Order. *See Kercado v. Astrue*, No. 08 Civ. 478, 2008 WL 5093381, at *1 (S.D.N.Y. Dec. 3, 2008) ("It is well settled that the ALJ has an affirmative duty to

develop the record in a disability benefits case and that remand is appropriate where this duty is not discharged."); *accord Lamorey v. Barnhart*, 158 F. App'x 361, 362 (2d Cir. 2006) ("Generally, when an ALJ fails adequately to develop the record, we remand for further proceedings."); S.S.R. 16-3P, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("We will not evaluate an individual's symptoms without making every reasonable effort to obtain a complete medical history unless the evidence supports a finding that the individual is disabled." (footnote omitted)).

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: January 2, 2018
      Brooklyn, New York